(Slip Opinion)　　　OCTOBER TERM, 2008　　　1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CONE *v.* BELL, WARDEN

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 07–1114.　Argued December 9, 2008—Decided April 28, 2009

After the State discredited petitioner Cone's defense that he killed two people while suffering from acute psychosis caused by drug addiction, he was convicted and sentenced to death. The Tennessee Supreme Court affirmed on direct appeal and the state courts denied postconviction relief. Later, in a second petition for state postconviction relief, Cone raised the claim that the State had violated *Brady* v. *Maryland*, 373 U. S. 83, by suppressing witness statements and police reports that would have corroborated his insanity defense and bolstered his case in mitigation of the death penalty. The postconviction court denied him a hearing on the ground that the *Brady* claim had been previously determined, either on direct appeal or in earlier collateral proceedings. The State Court of Criminal Appeals affirmed. Cone then filed a petition for a writ of habeas corpus in Federal District Court. That Court denied relief, holding the *Brady* claim procedurally barred because the state courts' disposition rested on adequate and independent state grounds: Cone had waived it by failing to present his claim in state court. Even if he had not defaulted the claim, ruled the court, it would fail on its merits because none of the withheld evidence would have cast doubt on his guilt. The Sixth Circuit agreed with the latter conclusion, but considered itself barred from reaching the claim's merits because the state courts had ruled the claim previously determined or waived under state law.

*Held:*

　1. The state courts' rejection of Cone's *Brady* claim does not rest on a ground that bars federal review. Neither of the State's asserted justifications for such a bar—that the claim was decided by the State Supreme Court on direct review or that Cone had waived it by never properly raising it in state court—provides an independent and ade-

quate state ground for denying review of Cone's federal claim. The state postconviction court's denial of the *Brady* claim on the ground it had been previously determined in state court rested on a false premise: Cone had not presented the claim in earlier proceedings and, consequently, the state courts had not passed on it. The Sixth Circuit's rejection of the claim as procedurally defaulted because it had been twice presented to the Tennessee courts was thus erroneous. Also unpersuasive is the State's alternative argument that federal review is barred because the *Brady* claim was properly dismissed by the state postconviction courts as waived. Those courts held only that the claim had been previously determined, and this Court will not second-guess their judgment. Because the claim was properly preserved and exhausted in state court, it is not defaulted. Pp. 15–19.

2. The lower federal courts failed to adequately consider whether the withheld documents were material to Cone's sentence. Both the quantity and quality of the suppressed evidence lend support to Cone's trial position that he habitually used excessive amounts of drugs, that his addiction affected his behavior during the murders, and that the State's contrary arguments were false and misleading. Nevertheless, even when viewed in the light most favorable to Cone, the evidence does not sustain his insanity defense: His behavior before, during, and after the crimes was inconsistent with the contention that he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform it to the requirements of law. Because the likelihood that the suppressed evidence would have affected the jury's verdict on the insanity issue is remote, the Sixth Circuit did not err by denying habeas relief on the ground that such evidence was immaterial to the jury's guilt finding. The same cannot be said of that court's summary treatment of Cone's claim that the suppressed evidence would have influenced the jury's sentencing recommendation. Because the suppressed evidence might have been material to the jury's assessment of the proper punishment, a full review of that evidence and its effect on the sentencing verdict is warranted. Pp. 20–26.

492 F. 3d 743, vacated and remanded.

STEVENS, J., delivered the opinion of the Court, in which KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. ROBERTS, C. J., filed an opinion concurring in the judgment. ALITO, J., filed an opinion concurring in part and dissenting in part. THOMAS, J., filed a dissenting opinion, in which SCALIA, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 07–1114

_____

## GARY BRADFORD CONE, PETITIONER *v.* RICKY BELL, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[April 28, 2009]

JUSTICE STEVENS delivered the opinion of the Court.

The right to a fair trial, guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment, imposes on States certain duties consistent with their sovereign obligation to ensure "that 'justice shall be done'" in all criminal prosecutions. *United States* v. *Agurs*, 427 U. S. 97, 111 (1976) (quoting *Berger* v. *United States*, 295 U. S. 78, 88 (1935)). In *Brady* v. *Maryland*, 373 U. S. 83 (1963), we held that when a State suppresses evidence favorable to an accused that is material to guilt or to punishment, the State violates the defendant's right to due process, "irrespective of the good faith or bad faith of the prosecution." *Id.*, at 87.

In this case, Gary Cone, a Vietnam veteran sentenced to death, contends that the State of Tennessee violated his right to due process by suppressing witness statements and police reports that would have corroborated his trial defense and bolstered his case in mitigation of the death penalty. At his trial in 1982, Cone asserted an insanity defense, contending that he had killed two people while suffering from acute amphetamine psychosis, a disorder

caused by drug addiction. The State of Tennessee discredited that defense, alleging that Cone's drug addiction was "baloney." Ten years later, Cone learned that the State had suppressed evidence supporting his claim of drug addiction.

Cone presented his new evidence to the state courts in a petition for postconviction relief, but the Tennessee courts denied him a hearing on the ground that his *Brady* claim had been "previously determined," either on direct appeal from his conviction or in earlier collateral proceedings. On application for a writ of habeas corpus pursuant to 28 U. S. C. §2254, the Federal District Court concluded that the state courts' disposition rested on an adequate and independent state ground that barred further review in federal court, and the Court of Appeals for the Sixth Circuit agreed. Doubt concerning the correctness of that holding, coupled with conflicting decisions from other Courts of Appeals, prompted our grant of certiorari.

After a complete review of the trial and postconviction proceedings, we conclude that the Tennessee courts' rejection of petitioner's *Brady* claim does not rest on a ground that bars federal review. Furthermore, although the District Court and the Court of Appeals passed briefly on the merits of Cone's claim, neither court distinguished the materiality of the suppressed evidence with respect to Cone's guilt from the materiality of the evidence with respect to his punishment. While we agree that the withheld documents were not material to the question whether Cone committed murder with the requisite mental state, the lower courts failed to adequately consider whether that same evidence was material to Cone's sentence. Therefore, we vacate the decision of the Court of Appeals and remand the case to the District Court to determine in the first instance whether there is a reasonable probability that the withheld evidence would have altered at least one juror's assessment of the appropriate penalty for Cone's

crimes.

I

On the afternoon of Saturday, August 10, 1980, Cone robbed a jewelry store in downtown Memphis, Tennessee. Fleeing the scene by car, he led police on a high-speed chase into a residential neighborhood. Once there, he abandoned his vehicle and shot a police officer.[1] When a bystander tried to impede his escape, Cone shot him, too, before escaping on foot.

A short time later, Cone tried to hijack a nearby car. When that attempt failed (because the driver refused to surrender his keys), Cone tried to shoot the driver and a hovering police helicopter before realizing he had run out of ammunition. He then fled the scene. Although police conducted a thorough search, Cone was nowhere to be found.

Early the next morning, Cone reappeared in the same neighborhood at the door of an elderly woman. He asked to use her telephone, and when she refused, he drew a gun. Before he was able to gain entry, the woman slammed the door and called the police. By the time officers arrived, however, Cone had once again disappeared.

That afternoon, Cone gained entry to the home of 93-year-old Shipley Todd and his wife, 79-year-old Cleopatra Todd. Cone beat the couple to death with a blunt instrument and ransacked the first floor of their home. Later, he shaved his beard and escaped to the airport without being caught. Cone then traveled to Florida, where he was arrested several days later after robbing a drugstore in Pompano Beach.

A Tennessee grand jury charged Cone with two counts

──────────

[1] From the abandoned vehicle, police recovered stolen jewelry, large quantities of illegal and prescription drugs, and approximately $2,400 in cash. Much of the cash was later connected to a grocery store robbery that had occurred on the previous day.

of first-degree murder, two counts of murder in the perpe-
tration of a burglary, three counts of assault with intent to
murder, and one count of robbery by use of deadly force.
At his jury trial in 1982, Cone did not challenge the over-
whelming physical and testimonial evidence supporting
the charges against him. His sole defense was that he was
not guilty by reason of insanity.

Cone's counsel portrayed his client as suffering from
severe drug addiction attributable to trauma Cone had
experienced in Vietnam. Counsel argued that Cone had
committed his crimes while suffering from chronic am-
phetamine psychosis, a disorder brought about by his drug
abuse. That defense was supported by the testimony of
three witnesses. First was Cone's mother, who described
her son as an honorably discharged Vietnam veteran who
had changed following his return from service. She re-
called Cone describing "how terrible" it had been to handle
the bodies of dead soldiers, and she explained that Cone
slept restlessly and sometimes "holler[ed]" in his sleep.
Tr. 1643–1645 (Apr. 20, 1982). She also described one
occasion, following Cone's return from service, when a
package was shipped to him that contained marijuana.
Before the war, she asserted, Cone had not used drugs of
any kind.

Two expert witnesses testified on Cone's behalf. Mat-
thew Jaremko, a clinical psychologist, testified that Cone
suffered from substance abuse and posttraumatic stress
disorders related to his military service in Vietnam. Ja-
remko testified that Cone had expressed remorse for the
murders, and he opined that Cone's mental disorder ren-
dered him substantially incapable of conforming his con-
duct to the law. Jonathan Lipman, a neuropharmacolo-
gist, recounted at length Cone's history of illicit drug use,
which began after Cone joined the Army and escalated to
the point where Cone was consuming "rather horrific"
quantities of drugs daily. App. 100. According to Lipman,

Cone's drug abuse had led to chronic amphetamine psychosis, a disorder manifested through hallucinations and ongoing paranoia that prevented Cone from obeying the law and appreciating the wrongfulness of his actions.

In rebutting Cone's insanity defense the State's strategy throughout trial was to present Cone as a calculating, intelligent criminal who was fully in control of his decisions and actions at the time of the crimes. A key component of that strategy involved discrediting Cone's claims of drug use.[2] Through cross-examination, the State established that both defense experts' opinions were based solely on Cone's representations to them about his drug use rather than on any independently corroborated sources, such as medical records or interviews with family or friends. The prosecution also adduced expert and lay testimony to establish that Cone was not addicted to drugs and had acted rationally and intentionally before, during, and after the Todd murders.

Particularly damaging to Cone's defense was the testimony of rebuttal witness Ilene Blankman, who had spent time with Cone several months before the murders and at whose home Cone had stayed in the days leading up to his arrest in Florida. Blankman admitted to being a former heroin addict but testified that she no longer used drugs and tried to stay away from people who did. She testified that she had never seen Cone use drugs, had never observed track marks on his body, and had never seen him exhibit signs of paranoia.

Emphasizing the State's position with respect to Cone's

_____

[2] The State also cast doubt on Cone's defense by eliciting testimony that Cone had enrolled in college following his return from Vietnam and had graduated with high honors. Later, after serving time in prison for an armed robbery, Cone gained admission to the University of Arkansas Law School. The State suggested that Cone's academic success provided further proof that he was not impaired following his return from war.

alleged addiction, the prosecutor told the jury during closing argument, "[Y]ou're not dealing with a crazy person, an insane man. A man . . . out of his mind. You're dealing, I submit to you, with a premeditated, cool, deliberate—and even cowardly, really—murderer." Tr. 2084 (Apr. 22, 1982). Pointing to the quantity of drugs found in Cone's car, the prosecutor suggested that far from being a drug addict, Cone was actually a drug dealer. The prosecutor argued, "I'm not trying to be absurd, but he says he's a drug addict. I say baloney. He's a drug seller. Doesn't the proof show that?" *Id.*, at 107.[3]

The jury rejected Cone's insanity defense and found him guilty on all counts. At the penalty hearing, the prosecution asked the jury to find that Cone's crime met the criteria for four different statutory aggravating factors, any one of which would render him eligible for a capital sentence.[4] Cone's counsel called no witnesses but instead rested on the evidence adduced during the guilt phase proceedings. Acknowledging that the prosecution's experts had disputed the existence of Cone's alleged mental disorder, counsel nevertheless urged the jury to consider Cone's drug addiction when weighing the aggravating and

——————
[3] In his closing rebuttal argument, the prosecutor continued to press the point, asserting: "There aren't any charges for drug sales, but that doesn't mean that you can't look and question in deciding whether or not this man was, in fact, a drug user, or why he had those drugs. Did he just have those drugs, or did he have those drugs and thousands of dollars in that car? Among those drugs are there only the drugs he used? How do we know if he used drugs? The only thing that we ever had that he used drugs, period, is the fact that those drugs were in the car and what he told people. What he told people. But according to even what he told people, there are drugs in there he didn't even use." Tr. 2068 (Apr. 22, 1982).

[4] The jury could impose a capital sentence only if it unanimously determined that one or more statutory aggravating circumstances had been proved by the State beyond a reasonable doubt, and that the mitigating circumstances of the case did not outweigh any statutory aggravating factors. Tenn. Code Ann. §39–2–203(g) (1982).

mitigating factors in the case.[5]  The jury found all four aggravating factors and unanimously returned a sentence of death.[6]

## II

On direct appeal Cone raised numerous challenges to his conviction and sentence.  Among those was a claim that the prosecution violated state law by failing to disclose a tape-recorded statement and police reports relating to several trial witnesses.  See App. 114–117.  The Tennessee Supreme Court rejected each of Cone's claims, and affirmed his conviction and sentence.  *State* v. *Cone*, 665 S. W. 2d 87 (1984).[7]  Cone then filed a petition for postcon-

_____

[5] As defense counsel emphasized to the jury, one of the statutory mitigating factors it was required to consider was whether "[t]he capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected his judgment."  §39–2404(j)(8).

[6] Specifically, the jury found Cone had committed one or more prior felonies involving the use or threat of violence, see §39–2404(i)(2); the murders had been committed for the purpose of avoiding, interfering with, or preventing Cone's lawful arrest or prosecution, see §39–2404(i)(6); the murders were especially heinous, atrocious, or cruel in that they involved torture and depravity of mind, see §39–2404(i)(5); and Cone had knowingly created a risk of death to two or more persons, other than the victim murdered, during his act of murder, see §39–2404(i)(3).  The Tennessee Supreme Court later observed that by finding Cone guilty of murder in the first degree during the perpetration of a burglary, the jury implicitly found the existence of an additional statutory aggravating factor: that the murders occurred while Cone was committing a burglary, §39–2404(i)(7).  *State* v. *Cone*, 665 S. W. 2d 87, 94 (1984).

[7] In summarizing the trial proceedings the Tennessee Supreme Court observed: "The only defense interposed on [Cone's] behalf was that of insanity, or lack of mental capacity, due to drug abuse and to stress arising out of his previous service in the Vietnamese war, some eleven years prior to the events involved in this case.  This proved to be a tenuous defense, at best, since neither of the expert witnesses who

viction relief, primarily raising claims that his trial counsel had been ineffective; the Tennessee Court of Criminal Appeals affirmed the denial of that petition in 1987. *Cone* v. *State*, 747 S. W. 2d 353.

In 1989, Cone, acting *pro se*, filed a second petition for postconviction relief, raising myriad claims of error. Among these was a claim that the State had failed to disclose evidence in violation of his rights under the United States Constitution. At the State's behest, the postconviction court summarily denied the petition, concluding that all the claims raised in it had either been "previously determined" or "waived." Order Dismissing Petition for Post-Conviction Relief in *Cone* v. *State*, No. P–06874 (Crim. Ct. Shelby Cty., Tenn., Jan. 2, 1990).[8] At that time, the court did not specify which claims fell into which category.

Cone appealed the denial of his petition to the Tennessee Court of Criminal Appeals, asserting that the postconviction court had erred by dismissing 13 claims—his

---

testified on his behalf had ever seen or heard of him until a few weeks prior to the trial. Neither was a medical doctor or psychiatrist, and neither had purported to treat him as a patient. Their testimony that he lacked mental capacity was based purely upon his personal recitation to them of his history of military service and drug abuse." *Id.*, at 90.

[8] Under Tennessee law in effect at the time a criminal defendant was entitled to collateral relief if his conviction or sentence violated "any right guaranteed by the constitution of [Tennessee] or the Constitution of the United States." Tenn. Code Ann. §40–30–105 (1982); see also §40–30–102. Any hearing on a petition for postconviction relief was limited, however, to claims that had not been "waived or previously determined." See §40–30–111. A ground for relief was "previously determined" if "a court of competent jurisdiction ha[d] ruled on the merits [of the claim] after a full and fair hearing." §40–30–112(a). The claim was waived "if the petitioner knowingly and understandingly failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." §40–30–112(b)(1).

*Brady* claim among them—as previously determined when, in fact, they had not been "previously addressed or determined by any court." Brief for Petitioner-Appellant Gary Bradford Cone in No. P–06874, pp. 23–24, and n. 11. In addition Cone urged the court to remand the case to allow him, with the assistance of counsel, to rebut the presumption that he had waived any of his claims by not raising them at an earlier stage in the litigation. *Id.*, at 24.[9] The court agreed and remanded the case for further proceedings.

On remand counsel was appointed and an amended petition was filed. The State once again urged the post-conviction court to dismiss Cone's petition. Apparently conflating the state-law disclosure claim Cone had raised on direct appeal with his newly filed *Brady* claim, the State represented that the Tennessee Supreme Court had already decided the *Brady* issue and that Cone was therefore barred from relitigating it. See App. 15–16.

While that petition remained pending before the post-conviction court, the Tennessee Court of Appeals held for the first time that the State's Public Records Act allowed a criminal defendant to review the prosecutor's file in his case. See *Capital Case Resource Center of Tenn., Inc.* v. *Woodall,* No. 01–A–01–9104–CH–00150, 1992 WL 12217 (Jan. 29, 1992). Based on that holding, Cone obtained access to the prosecutor's files, in which he found proof that evidence had indeed been withheld from him at trial. Among the undisclosed documents Cone discovered were statements from witnesses who had seen him several days before and several days after the murders. The witnesses described Cone's appearance as "wild eyed," App. 50, and

————————

[9] See *Swanson* v. *State*, 749 S. W. 2d 731, 734 (Tenn. 1988) (courts should not dismiss postconviction petitions on technical grounds unless the petitioner has first had "reasonable opportunity, with aid of counsel, to file amendments" and rebut presumption of waiver (internal quotation marks omitted)).

his behavior as "real weird," *id.*, at 49. One witness af-
firmed that Cone had appeared "to be drunk or high."
*Ibid.* The file also contained a police report describing
Cone's arrest in Florida following the murders. In that
report, a police officer described Cone looking around "in a
frenzied manner," and "walking in [an] agitated manner"
prior to his apprehension. *Id.*, at 53. Multiple police
bulletins describing Cone as a "drug user" and a "heavy
drug user" were also among the undisclosed evidence. See
*id.*, at 55–59.

  With the newly discovered evidence in hand, Cone
amended his postconviction petition once again in October
1993, expanding his *Brady* claim to allege more specifi-
cally that the State had withheld exculpatory evidence
demonstrating that he "did in fact suffer drug problems
and/or drug withdrawal or psychosis both at the time of
the offense and in the past." App. at 20. Cone pointed to
specific examples of evidence that had been withheld,
alleging the evidence was "exculpatory to both the jury's
determination of petitioner's guilt and its consideration of
the proper sentence," and that there was "a reasonable
probability that, had the evidence not been withheld, the
jurors would not have convicted [him] and would not have
sentenced him to death." *Id.*, at 20–21.[10] In a lengthy
affidavit submitted with his amended petition, Cone ex-
plained that he had not raised his *Brady* claim in earlier
proceedings because the facts underlying it "ha[d] been
revealed through disclosure of the State's files, which
occurred after the first post-conviction proceeding." App.
18.

  After denying Cone's request for an evidentiary hearing,

---

  [10] As examples of evidence that had been withheld, Cone pointed to
"statements of Charles and Debbie Slaughter, statements of Sue Cone,
statements of Lucille Tuech, statements of Herschel Dalton, and
patrolman Collins" and "statements contained in official police reports."
App. 20.

the postconviction court denied relief on each claim presented in the amended petition. Many of the claims were dismissed on the ground that they had been waived by Cone's failure to raise them in earlier proceedings; however, consistent with the position urged by the State, the court dismissed many others, including the *Brady* claim, as mere "re-statements of previous grounds heretofore determined and denied by the Tennessee Supreme Court upon Direct Appeal or the Court of Criminal Appeals upon the First Petition." App. 22.

Noting that "the findings of the trial court in postconviction hearings are conclusive on appeal unless the evidence preponderates against the judgment," the Tennessee Court of Criminal Appeals affirmed. *Cone* v. *State*, 927 S. W. 2d 579, 581–582 (1995). The court concluded that Cone had "failed to rebut the presumption of waiver as to all claims raised in his second petition for postconviction relief *which had not been previously determined*." *Id.*, at 582 (emphasis added). Cone unsuccessfully petitioned for review in the Tennessee Supreme Court, and we denied certiorari. *Cone* v. *Tennessee*, 519 U. S. 934 (1996).

## III

In 1997, Cone filed a petition for a federal writ of habeas corpus. Without disclosing to the District Court the contrary position it had taken in the state-court proceedings, the State acknowledged that Cone's *Brady* claim had not been raised prior to the filing of his second postconviction petition. However, wrenching out of context the state appellate court's holding that Cone had "waived 'all claims . . . which had not been previously determined,'" the State now asserted the *Brady* claim had been waived. App. 39 (quoting *Cone*, 927 S. W. 2d, at 581–582).

In May 1998, the District Court denied Cone's request for an evidentiary hearing on his *Brady* claim. Lamenting

that its consideration of Cone's claims had been "made more difficult" by the parties' failure to articulate the state procedural rules under which each of Cone's claims had allegedly been defaulted, App. to Pet. for Cert. 98a, the District Court nevertheless held that the *Brady* claim was procedurally barred. After parsing the claim into 11 separate subclaims based on 11 pieces of withheld evidence identified in the habeas petition, the District Court concluded that Cone had waived each subclaim by failing to present or adequately develop it in state court. App. to Pet. for Cert. 112a–113a. Moreover, the court concluded that even if Cone had not defaulted his *Brady* claim, it would fail on its merits because none of the withheld evidence would have cast doubt on Cone's guilt. App. to Pet. for Cert. 116a–119a. Throughout its opinion the District Court repeatedly referenced factual allegations contained in early versions of Cone's second petition for postconviction relief rather than the amended version of the petition upon which the state court's decision had rested. See, *e.g.*, *id.*, at 112a.

After the District Court dismissed the remainder of Cone's federal claims, the Court of Appeals for the Sixth Circuit granted him permission to appeal several issues, including the alleged suppression of *Brady* material. Before the Court of Appeals, the State shifted its procedural default argument once more, this time contending that Cone had "simply never raised" his *Brady* claim in the state court because he failed to make adequate factual allegations to support that claim in his second petition for postconviction relief. App. 41. Repeating the District Court's error, the State directed the Court of Appeals' attention to Cone's *pro se* petition and to the petition Cone's counsel filed *before* he gained access to the prosecution's case file. *Id.*, at 41–42, and n. 7. In other words, instead of citing the October 1993 amended petition on which the state court's decision had been based and to

which its order explicitly referred, the State pointed the court to earlier, less developed versions of the same claim.

The Court of Appeals concluded that Cone had procedurally defaulted his *Brady* claim and had failed to show cause and prejudice to overcome the default. *Cone* v. *Bell*, 243 F. 3d 961, 968 (2001). The court acknowledged that Cone had raised his *Brady* claim. 243 F. 3d, at 969. Nevertheless, the court considered itself barred from reaching the merits of the claim because the Tennessee courts had concluded the claim was "previously determined or waived under Tenn. Code Ann. §40–30–112." *Ibid.*

Briefly mentioning several isolated pieces of suppressed evidence, the court summarily concluded that even if Cone's *Brady* claim had not been defaulted, the suppressed evidence would not undermine confidence in the verdict (and hence was not *Brady* material) "because of the overwhelming evidence of Cone's guilt." 243 F. 3d, at 968. The court did not discuss whether any of the undisclosed evidence was material with respect to Cone's sentencing proceedings.

Although the Court of Appeals rejected Cone's *Brady* claim, it held that he was entitled to have his death sentence vacated because of his counsel's ineffective assistance at sentencing. See 243 F. 3d, at 975. In 2002, this Court reversed that holding after concluding that the Tennessee courts' rejection of Cone's ineffective-assistance-of-counsel claim was not "objectively unreasonable" within the meaning of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See *Bell* v. *Cone*, 535 U. S. 685, 699.

In 2004, following our remand, the Court of Appeals again entered judgment ordering a new sentencing hearing, this time based on the purported invalidity of an aggravating circumstance found by the jury. *Cone* v. *Bell*, 359 F. 3d 785. Again we granted certiorari and reversed, relying in part on the deferential standard that governs

our review of state-court decisions under AEDPA. See *Bell* v. *Cone*, 543 U. S. 447, 452–458 (2005) (*per curiam*).

Following our second remand, the Court of Appeals revisited Cone's *Brady* claim. This time, the court divided the claim into four separate subclaims: "(1) evidence regarding [Cone's] drug use; (2) evidence that might have been useful to impeach the testimony and credibility of prosecution witness Sergeant Ralph Roby; (3) FBI reports;[11] and (4) evidence showing that prosecution witness Ilene Blankman was untruthful and biased." 492 F. 3d 743, 753 (2007). Noting that it had previously found all four subclaims to be procedurally defaulted, the court declined to reconsider its earlier decision. See *ibid.* (citing *Cone*, 243 F. 3d, at 968–970). At the same time, the court reiterated that the withheld evidence "would not have overcome the overwhelming evidence of Cone's guilt in committing a brutal double murder and the persuasive testimony that Cone was not under the influence of drugs." 492 F. 3d, at 756. Summarily discounting Cone's contention that the withheld evidence was material with respect to his sentence, the court concluded that the introduction of the suppressed evidence would not have altered the jurors' finding that Cone's alleged drug use did not "vitiate his specific intent to murder his victims and did not mitigate his culpability sufficient to avoid the death sentence." *Id.*, at 757.

Judge Merritt dissented. He castigated the State not only for withholding documents relevant to Cone's sole defense and plea for mitigation, but also for its "falsifica-

---

[11] In the course of federal habeas proceedings, Cone had obtained access to files from the Federal Bureau of Investigation where he found additional previously undisclosed evidence not contained in the state prosecutor's case file. The suppressed FBI documents make repeated reference to Cone's drug use and corroborate his expert's representation that he had used drugs during his prior incarceration for armed robbery. See *id.*, at 26–28.

tion of the procedural record . . . concerning the State's procedural default defense to the *Brady* claim." *Id.*, at 760. Over the dissent of seven judges, Cone's petition for rehearing en banc was denied. 505 F. 3d 610 (2007).

We granted certiorari, 554 U. S. ___ (2008), to answer the question whether a federal habeas claim is "procedurally defaulted" when it is twice presented to the state courts.

## IV

During the state and federal proceedings below, the State of Tennessee offered two different justifications for denying review of the merits of Cone's *Brady* claim. First, in connection with Cone's amended petition for state postconviction relief, the State argued that the *Brady* claim was barred because it had been decided on direct appeal. See App. 15–16. Then, in connection with Cone's federal habeas petition, the State argued that Cone's claim was waived because it had never been properly raised before the state courts. See *id.*, at 39. The District Court and the Court of Appeals agreed that Cone's claim was procedurally barred, but for different reasons. The District Court held that the claim had been waived, App. to Pet. for Cert. 102a, while the Court of Appeals held that the claim had been either waived or previously determined, *Cone*, 243 F. 3d, at 969. We now conclude that neither prior determination nor waiver provides an independent and adequate state ground for denying Cone review of his federal claim.

It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that "is independent of the federal question and adequate to support the judgment." *Coleman* v. *Thompson*, 501 U. S. 722, 729 (1991); *Lee* v. *Kemna*, 534 U. S. 362, 375 (2002). In the context of federal habeas proceed-

ings, the independent and adequate state ground doctrine is designed to "ensur[e] that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U. S., at 732. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of "an opportunity to address those claims in the first instance" and frustrates the State's ability to honor his constitutional rights. *Id.*, at 732, 748. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review. See *id.*, at 731.

That does not mean, however, that federal habeas review is barred every time a state court invokes a procedural rule to limit its review of a state prisoner's claims. We have recognized that "'the adequacy of state procedural bars to the assertion of federal questions' . . . is not within the State's prerogative finally to decide; rather, adequacy 'is itself a federal question.'" *Lee*, 534 U. S., at 375 (quoting *Douglas* v. *Alabama*, 380 U. S. 415, 422 (1965)); see also *Coleman*, 501 U. S., at 736 ("[F]ederal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on independent and adequate state grounds"). The question before us now is whether federal review of Cone's *Brady* claim is procedurally barred either because the claim was twice presented to the state courts or because it was waived, and thus not presented at all.

First, we address the contention that the repeated presentation of a claim in state court bars later federal review. The Tennessee postconviction court denied Cone's *Brady* claim after concluding it had been previously determined

following a full and fair hearing in state court. See Tenn. Code Ann. §40–30–112(a) (1982). That conclusion rested on a false premise: Contrary to the state courts' finding, Cone had not presented his *Brady* claim in earlier proceedings and, consequently, the state courts had not passed on it. The Sixth Circuit recognized that Cone's *Brady* claim had not been decided on direct appeal, see *Cone*, 243 F. 3d, at 969, but felt constrained by the state courts' refusal to reach the merits of that claim on postconviction review. The Court of Appeals concluded that because the state postconviction courts had applied a state procedural law to avoid reaching the merits of Cone's *Brady* claim, "an 'independent and adequate' state ground" barred federal habeas review. 243 F. 3d, at 969. In this Court the State does not defend that aspect of the Court of Appeals' holding, and rightly so.

When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review. In *Ylst* v. *Nunnemaker*, 501 U. S. 797, 804, n. 3 (1991), we observed in passing that when a state court declines to revisit a claim it has already adjudicated, the effect of the later decision upon the availability of federal habeas is "nil" because "a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a pre-existing procedural default."[12] When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's

_____

[12] With the exception of the Sixth Circuit, all Courts of Appeals to have directly confronted the question both before and after *Ylst*, 501 U. S. 797, have agreed that a state court's successive rejection of a federal claim does not bar federal habeas review. See, *e.g.*, *Page* v. *Frank*, 343 F. 3d 901, 907 (CA7 2003); *Brecheen* v. *Reynolds*, 41 F. 3d 1343, 1358 (CA10 1994); *Bennett* v. *Whitley*, 41 F. 3d 1581, 1582 (CA5 1994); *Silverstein* v. *Henderson*, 706 F. 2d 361, 368 (CA2 1983). See also *Lambright* v. *Stewart*, 241 F. 3d 1201, 1206 (CA9 2001).

decision does not indicate that the claim has been proce-durally defaulted. To the contrary, it provides strong evidence that the claim has already been given full consid-eration by the state courts and thus is *ripe* for federal adjudication. See 28 U. S. C. §2254(b)(1)(A) (permitting issuance of a writ of habeas corpus only after "the appli-cant has exhausted the remedies available in the courts of the State").

A claim is procedurally barred when it has not been fairly presented to the state courts for their initial consid-eration—not when the claim has been presented more than once. Accordingly, insofar as the Court of Appeals rejected Cone's *Brady* claim as procedurally defaulted because the claim had been twice presented to the Ten-nessee courts, its decision was erroneous.

As an alternative (and contradictory) ground for barring review of Cone's *Brady* claim, the State has argued that Cone's claim was properly dismissed by the state postcon-viction court on the ground it had been waived. We are not persuaded. The state appellate court affirmed the denial of Cone's *Brady* claim on the same mistaken ground offered by the lower court—that the claim had been previ-ously determined.[13] Contrary to the State's assertion, the

—————

[13]As recounted earlier, Cone's state postconviction petition contained numerous claims of error. The state postconviction court dismissed some of those claims as waived and others, including the *Brady* claim, as having been previously determined. In affirming the denial of Cone's petition the Tennessee Court of Criminal Appeals summarily stated that Cone had "failed to rebut the presumption of waiver as to all claims raised in his second petition for post-conviction relief which had not been previously determined." *Cone* v. *State*, 927 S. W. 2d 579, 582 (1995). Pointing to that language, the State asserts that the Tennessee Court of Criminal Appeals denied Cone's *Brady* claim not because it had been previously determined, but because it was waived in the postconviction court proceedings. Not so. Without questioning the trial court's finding that Cone's *Brady* claim had been previously determined, the Court of Criminal Appeals affirmed the denial of

Tennessee appellate court did not hold that Cone's *Brady* claim was waived.

When a state court declines to find that a claim has been waived by a petitioner's alleged failure to comply with state procedural rules, our respect for the state-court judgment counsels us to do the same. Although we have an independent duty to scrutinize the application of state rules that bar our review of federal claims, *Lee*, 534 U. S., at 375, we have no concomitant duty to apply state procedural bars where state courts have themselves declined to do so. The Tennessee courts did not hold that Cone waived his *Brady* claim, and we will not second-guess their judgment.[14]

————————

Cone's postconviction petition in its entirety. Nothing in that decision suggests the appellate court believed the *Brady* claim had been waived in the court below.

Similarly, while JUSTICE ALITO's parsing of the record persuades him that Cone failed to adequately raise his *Brady* claim to the Tennessee Court of Criminal Appeals, he does not argue that the court expressly held that Cone waived the claim. A review of Cone's opening brief reveals that he made a broad challenge to the postconviction court's dismissal of his petition and plainly asserted that the court erred by dismissing claims as previously determined on direct appeal or in his initial postconviction petition. See Brief for Petitioner-Appellant in No. 02–C–01–9403–CR–00052 (Tenn. Crim. App.), pp. 7, 14. The state appellate court did not state or suggest that Cone had waived his *Brady* claim. Rather, after commending the postconviction court for its "exemplary and meticulous treatment of the appellant's petition," *Cone*, 927 S. W. 2d, at 581, the appellate court simply adopted without modification the lower court's findings with respect to the application of Tenn. Code Ann. §40–30–112 to the facts of this case. The best reading of the Tennessee Court of Criminal Appeals' decision is that it was based on an approval of the postconviction court's reasoning rather than on an unmentioned failure by Cone to adequately challenge the dismissal of his *Brady* claim on appeal.

[14] Setting aside the state courts' mistaken belief that Cone's *Brady* claim had been previously determined, there are many reasons the state courts might have rejected the State's waiver argument. The record establishes that the suppressed documents which form the basis for Cone's claim were not available to him until the Tennessee Court of

The State's procedural objections to federal review of the merits of Cone's claim have resulted in a significant delay in bringing this unusually protracted case to a conclusion. Ultimately, however, they provide no obstacle to judicial review. Cone properly preserved and exhausted his *Brady* claim in the state court; therefore, it is not defaulted. We turn now to the merits of that claim.

V

Although the State is obliged to "prosecute with earnestness and vigor," it "is as much [its] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger*, 295 U. S., at 88. Accordingly, we have held that when the State withholds from a criminal defendant evidence that is material to his guilt or punishment, it violates his right to due process of law in violation of the Fourteenth Amendment. See *Brady*, 373 U. S., at 87. In *United States* v. *Bagley*, 473 U. S. 667, 682 (1985) (opinion of Blackmun, J.), we explained that evidence is "material" within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. In other words, favorable evidence is subject to constitutionally mandated disclosure when it "could reasonably be taken to put the whole case in such a differ-

_____

Appeals' 1992 decision interpreting the State's Public Records Act as authorizing the disclosure of prosecutorial records. Soon after obtaining access to the prosecutor's file and discovering within it documents that had not been disclosed prior to trial, Cone amended his petition for postconviction relief, adding detailed allegations regarding the suppressed evidence recovered from the file, along with an affidavit explaining the reason why his claim had not been filed sooner. See App. 13, 18. The State did not oppose the amendment of Cone's petition on the ground that it was untimely, and it appears undisputed that there would have been no basis under state law for doing so. See Brief for Petitioner 7, n. 1.

ent light as to undermine confidence in the verdict." *Kyles* v. *Whitley*, 514 U. S. 419, 435 (1995); accord, *Banks* v. *Dretke*, 540 U. S. 668, 698–699 (2004); *Strickler* v. *Greene*, 527 U. S. 263, 290 (1999).[15]

The documents suppressed by the State vary in kind, but they share a common feature: Each strengthens the inference that Cone was impaired by his use of drugs around the time his crimes were committed. The suppressed evidence includes statements by witnesses acknowledging that Cone appeared to be "drunk or high," App. 49, "acted real weird," *ibid.*, and "looked wild eyed," *id.*, at 50, in the two days preceding the murders.[16] It also includes documents that could have been used to impeach

———————

[15] Although the Due Process Clause of the Fourteenth Amendment, as interpreted by *Brady*, only mandates the disclosure of material evidence, the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations. See *Kyles*, 514 U. S., at 437 ("[T]he rule in *Bagley* (and, hence, in *Brady*) requires less of the prosecution than the ABA Standards for Criminal Justice Prosecution Function and Defense Function 3–3.11(a) (3d ed. 1993)"). See also ABA Model Rule of Professional Conduct 3.8(d) (2008) ("The prosecutor in a criminal case shall" "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal"). As we have often observed, the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure. See *Kyles*, 514 U. S., at 439; *United States* v. *Bagley*, 473 U. S. 667, 711, n. 4 (1985) (STEVENS, J., dissenting); *United States* v. *Agurs*, 427 U. S. 97, 108 (1976).

[16] The State contends that the statements were made by witnesses who observed Cone during and immediately after he committed robberies; therefore, it is not surprising that Cone appeared less than "serene." See Brief for Respondent 46. Although a jury would have been free to infer that Cone's behavior was attributable to his criminal activity, the evidence is also consistent with Cone's assertion that he was suffering from chronic amphetamine psychosis at the time of the crimes.

witnesses whose trial testimony cast doubt on Cone's drug
addiction. For example, Memphis police officer Ralph
Roby testified at trial that Cone had no needle marks on
his body when he was arrested—an observation that
bolstered the State's argument that Cone was not a drug
user. The suppressed evidence reveals, however, that
Roby authorized multiple teletypes to law enforcement
agencies in the days following the murders in which he
described Cone as a "drug user" and a "heavy drug user."
See *id.*, at 55–58.[17] A suppressed statement made by the
chief of police of Cone's hometown also describes Cone as a
serious drug user. See *Cone*, 243 F. 3d, at 968. And un-
disclosed notes of a police interview with Ilene Blankman
conducted several days after the murders reveal discrep-
ancies between her initial statement and her trial testi-
mony relevant to Cone's alleged drug use. App. 72–73. In
sum, both the quantity and the quality of the suppressed
evidence lends support to Cone's position at trial that he
habitually used excessive amounts of drugs, that his ad-
diction affected his behavior during his crime spree, and
that the State's arguments to the contrary were false and
misleading.

   Thus, the federal question that must be decided is
whether the suppression of that probative evidence de-
prived Cone of his right to a fair trial. See *Agurs*, 427

---

   [17]As the dissent points out, Roby did not testify directly that Cone
was not a drug user and FBI Agent Eugene Flynn testified that, at the
time of Cone's arrest in Pompano Beach, Cone reported that he had
used cocaine, Dilaudid, and Demerol and was suffering from "slight
withdrawal symptoms." See *post*, at 7, 11. See also Tr. 1916, 1920
(Apr. 22, 1982). It is important to note, however, that neither Flynn
nor Roby corroborated Cone's account of alleged drug use. Taken in
context, Roby's statement that he had not observed any needle marks
on Cone's body invited the jury to infer that Cone's self-reported drug
use was either minimal or contrived. See *id.*, at 1939. Therefore,
although the suppressed evidence does not directly contradict Roby's
trial testimony, it does place it in a different light.

U. S., at 108. Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to "any claim that was adjudicated on the merits in State court proceedings." 28 U. S. C. §2254(d). Instead, the claim is reviewed *de novo.* See, *e.g., Rompilla* v. *Beard*, 545 U. S. 374, 390 (2005) (*de novo* review where state courts did not reach prejudice prong under *Strickland* v. *Washington*, 466 U. S. 668 (1984)); *Wiggins* v. *Smith*, 539 U. S. 510, 534 (2003) (same).

Contending that the Federal District Court and Court of Appeals adequately and correctly resolved the merits of that claim, the State urges us to affirm the Sixth Circuit's denial of habeas relief. In assessing the materiality of the evidence suppressed by the State, the Court of Appeals suggested that two facts outweighed the potential force of the suppressed evidence. First, the evidence of Cone's guilt was overwhelming. Second, the evidence of Cone's drug use was cumulative because the jury had heard evidence of Cone's alleged addiction from witnesses and from officers who interviewed Cone and recovered drugs from his vehicle.[18] The Court of Appeals did not thoroughly review the suppressed evidence or consider what its cumulative effect on the jury would have been. Moreover, in concluding that the suppressed evidence was not material within the meaning of *Brady*, the court did not distinguish between the materiality of the evidence with respect to guilt and the materiality of the evidence with respect to punishment—an omission we find significant.

Evidence that is material to guilt will often be material

---

[18] In pointing to the trial evidence of Cone's drug use, the Court of Appeals made no mention of the fact that the State had discredited the testimony of Cone's experts on the ground that no independent evidence corroborated Cone's alleged addiction and that the State had argued that the drugs in Cone's car were intended for resale, rather than personal use.

for sentencing purposes as well; the converse is not always true, however, as *Brady* itself demonstrates. In our seminal case on the disclosure of prosecutorial evidence, defendant John Brady was indicted for robbery and capital murder. At trial, Brady took the stand and confessed to robbing the victim and being present at the murder but testified that his accomplice had actually strangled the victim. *Brady* v. *State*, 226 Md. 422, 425, 174 A. 2d 167, 168 (1961). After Brady was convicted and sentenced to death he discovered that the State had suppressed the confession of his accomplice, which included incriminating statements consistent with Brady's version of events. *Id.*, at 426, 174 A. 2d, at 169. The Maryland Court of Appeals concluded that Brady's due process rights were violated by the suppression of the accomplice's confession but declined to order a new trial on guilt. Observing that nothing in the accomplice's confession "could have reduced . . . Brady's offense below murder in the first degree," the state court ordered a new trial on the question of punishment only. *Id.*, at 430, 174 A. 2d, at 171. We granted certiorari and affirmed, rejecting Brady's contention that the state court's limited remand violated his constitutional rights. 373 U. S., at 88.

As in *Brady*, the distinction between the materiality of the suppressed evidence with respect to guilt and punishment is significant in this case. During the guilt phase of Cone's trial, the only dispute was whether Cone was "sane under the law," Tr. 2040 (Apr. 22, 1982), as his counsel described the issue, or "criminally responsible" for his conduct, App. 110, as the prosecutor argued. Under Tennessee law, Cone could not be held criminally responsible for the murders if, "at the time of [his] conduct as a result of mental disease or defect he lack[ed] substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." *Graham* v. *State*, 547 S. W. 2d 531, 543 (Tenn. 1977). Although we

take exception to the Court of Appeals' failure to assess the effect of the suppressed evidence "collectively" rather than "item by item," see *Kyles*, 514 U. S., at 436, we nevertheless agree that even when viewed in the light most favorable to Cone, the evidence falls short of being sufficient to sustain his insanity defense.

Cone's experts testified that his drug addiction and posttraumatic stress disorder originated during his service in Vietnam, more than 13 years before the Todds were murdered. During those years, despite Cone's drug use and mental disorder, he managed to successfully complete his education, travel, and (when not incarcerated) function in civil society. The suppressed evidence may have strengthened the inference that Cone was on drugs or suffering from withdrawal at the time of the murders, but his behavior before, during, and after the crimes was inconsistent with the contention that he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. See *Graham*, 547 S. W. 2d, at 543. The likelihood that the suppressed evidence would have affected the jury's verdict on the issue of insanity is therefore remote. Accordingly, we conclude that the Sixth Circuit did not err by denying habeas relief on the ground that the suppressed evidence was immaterial to the jury's finding of guilt.

The same cannot be said of the Court of Appeals' summary treatment of Cone's claim that the suppressed evidence influenced the jury's sentencing recommendation. There is a critical difference between the high standard Cone was required to satisfy to establish insanity as a matter of Tennessee law and the far lesser standard that a defendant must satisfy to qualify evidence as mitigating in a penalty hearing in a capital case. See *Bell*, 535 U. S., at 712 (STEVENS, J., dissenting) ("[T]here is a vast difference between insanity—which the defense utterly failed to

prove—and the possible mitigating effect of drug addiction incurred as a result of honorable service in the military"). As defense counsel emphasized in his brief opening statement during penalty phase proceedings, the jury was statutorily required to consider whether Cone's "capacity . . . to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected his judgment." Tenn. Code Ann. §39–2–203(j)(8) (1982). It is possible that the suppressed evidence, viewed cumulatively, may have persuaded the jury that Cone had a far more serious drug problem than the prosecution was prepared to acknowledge, and that Cone's drug use played a mitigating, though not exculpating, role in the crimes he committed.[19]  The evidence might also have rebutted the State's suggestion that Cone had manipulated his expert witnesses into falsely believing he was a drug addict when in fact he did not struggle with substance abuse.

Neither the Court of Appeals nor the District Court fully considered whether the suppressed evidence might have persuaded one or more jurors that Cone's drug addiction— especially if attributable to honorable service of his country in Vietnam—was sufficiently serious to justify a decision to imprison him for life rather than sentence him to death.  Because the evidence suppressed at Cone's trial

---

[19] We agree with the dissent that the standard to be applied by the District Court in evaluating the merits of Cone's *Brady* claim on remand is whether there is a reasonable probability that, had the suppressed evidence been disclosed, the result of the proceeding would have been different. See *post*, at 5.  Because neither the District Court nor the Court of Appeals considered the merits of Cone's claim with respect to the effect of the withheld evidence on his sentence, it is appropriate for the District Court, rather than this Court, to do so in the first instance.

may well have been material to the jury's assessment of the proper punishment in this case, we conclude that a full review of the suppressed evidence and its effect is warranted.

## VI

In the 27 years since Gary Cone was convicted of murder and sentenced to death, no Tennessee court has reached the merits of his claim that state prosecutors withheld evidence that would have bolstered his defense and rebutted the State's attempts to cast doubt on his alleged drug addiction. Today we hold that the Tennessee courts' procedural rejection of Cone's *Brady* claim does not bar federal habeas review of the merits of that claim. Although we conclude that the suppressed evidence was not material to Cone's conviction for first-degree murder, the lower courts erred in failing to assess the cumulative effect of the suppressed evidence with respect to Cone's capital sentence. Accordingly, the judgment of the Court of Appeals is vacated, and the case is remanded to the District Court with instructions to give full consideration to the merits of Cone's *Brady* claim.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 07–1114

———————

## GARY BRADFORD CONE, PETITIONER *v.* RICKY BELL, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[April 28, 2009]

CHIEF JUSTICE ROBERTS, concurring in the judgment.

The Court's decision is grounded in unusual facts that necessarily limit its reach. When issues under *Brady* v. *Maryland*, 373 U. S. 83 (1963), are presented on federal habeas, they usually have been previously addressed in state proceedings. Federal review is accordingly sharply limited by established principles of deference: If the claim has been waived under state rules, that waiver typically precludes federal review. If the claim has been decided in the state system, federal review is restricted in light of the state court's legal and factual conclusions. The unique procedural posture of this case presents a *Brady* claim neither barred under state rules for failure to raise it nor decided in the state system.

When it comes to that claim, the Court specifies that the appropriate legal standard is the one we set forth in *Kyles* v. *Whitley*, 514 U. S. 419, 435 (1995) (whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict"). See *ante*, at 20–21, 26, n. 19. I do not understand the majority to depart from that standard, and the majority certainly does not purport to do so.

That leaves only application of the accepted legal standard to the particular facts. It is highly unusual for this Court to engage in such an enterprise, see *Kyles*, *supra*, at

458 (SCALIA, J., dissenting), and the Court's asserted basis for doing so in this case is dubious, see *post*, at 1, 4–5 (THOMAS, J., dissenting).

In any event, the Court's review of the facts does not lead it to conclude that Cone is entitled to relief—only that the courts below did not adequately consider his claim with respect to sentencing. See *ante*, at 26 ("Neither the Court of Appeals nor the District Court fully considered whether the suppressed evidence" undermines confidence in Cone's sentence). The Court simply reviews the facts in the light most favorable to Cone, concludes that the evidence does *not* undermine confidence in the jury's determination that Cone is guilty, but sends the case back for "full consideration" of whether the same is true as to the jury's sentence of death. *Ante*, at 25–27.

So this is what we are left with: a fact-specific determination, under the established legal standard, viewing the unique facts in favor of the defendant, that the *Brady* claim fails with respect to guilt, but might have merit as to sentencing. In light of all this, I see no reason to quarrel with the Court's ruling on the *Brady* claim.

In considering on remand whether the facts establish a *Brady* violation, it is clear that the lower courts should analyze the issue under the *constitutional* standards we have set forth, not under whatever standards the American Bar Association may have established. The ABA standards are wholly irrelevant to the disposition of this case, and the majority's passing citation of them should not be taken to suggest otherwise. See *ante*, at 21, n. 15.

# SUPREME COURT OF THE UNITED STATES

———————

No. 07–1114

———————

## GARY BRADFORD CONE, PETITIONER *v.* RICKY BELL, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[April 28, 2009]

JUSTICE ALITO, concurring in part and dissenting in part.

We granted certiorari in this case to answer two questions:

"1. Is a federal habeas claim 'procedurally defaulted' because it has been presented twice to the state courts?

"2. Is a federal habeas court powerless to recognize that a state court erred in holding that state law precludes reviewing a claim?" Pet. for Cert. i.

Both of these questions are based on a factually incorrect premise, namely, that the Tennessee Court of Criminal Appeals, the highest state court to entertain petitioner's appeal from the denial of his second petition for state postconviction relief,[1] rejected petitioner's *Brady*[2] claim on the ground that the claim had been previously

———————

[1] Because the Tennessee Supreme Court denied discretionary review of the decision of the Tennessee Court of Criminal Appeals decision affirming the denial of petitioner's second amended petition for postconviction relief, we must look to the decision of the latter court to determine if the decision below was based on an adequate and independent state ground. See *Baldwin* v. *Reese*, 541 U. S. 27, 30–32 (2004); *O'Sullivan* v. *Boerckel*, 526 U. S. 838, 842–843 (1999).

[2] *Brady* v. *Maryland*, 373 U. S. 83 (1963).

decided by the Tennessee Supreme Court in petitioner's direct appeal. Petitioner's argument is that the State Supreme Court did not decide any *Brady* issue on direct appeal, that the Tennessee Court of Criminal Appeals erred in holding otherwise, and that the Sixth Circuit erred in concluding that the *Brady* claim had been procedurally defaulted on this ground. Petitioner is quite correct that his *Brady* claim was not decided on direct appeal, and the Court in the present case is clearly correct in holding that a second attempt to litigate a claim in state court does not necessarily bar subsequent federal habeas review. See *ante*, at 8–9.

But all of this is beside the point because the Tennessee Court of Criminal Appeals did not reject petitioner's *Brady* claim on the ground that the claim had been previously determined on direct appeal. Rather, petitioner's *Brady* claim was simply never raised before the Tennessee Court of Criminal Appeals, and that court did not rule on the claim at all.

Because the Sixth Circuit's decision on the issue of procedural default rests on the same mistaken premise that the Tennessee Court of Criminal Appeals rejected petitioner's Brady claim on the ground that it had been previously determined, I entirely agree with the majority that the Sixth Circuit's decision on that issue cannot be sustained and that a remand is required. I cannot join the Court's opinion, however, for two chief reasons.

First, the Court states without explanation that "Cone properly preserved and exhausted his *Brady* claim in the state court" and that therefore the claim has not been defaulted. *Ante*, at 20. Because Cone never fairly raised this claim in the Tennessee Court of Criminal Appeals, the claim is either not exhausted (if Cone could now raise the claim in state court) or is procedurally defaulted (if state law now provides no avenue for further review). I would leave these questions for resolution in the first instance on

remand.

Second, the Court, again without explanation, remands this case to the District Court, not the Court of Appeals. I see no justification for this step.

I

In order to understand the tangled procedural default issue presented in this case, it is necessary to review the far-from-exemplary manner in which the attorneys for petitioner and respondent litigated the *Brady* claim in the state courts.

On direct appeal, petitioner did not raise any *Brady* claim. As the Court notes, petitioner did claim that the State had violated a state discovery rule by failing to provide prior statements given by certain witnesses and that therefore the testimony of these witnesses should have been stricken. App. 114–117; *State* v. *Cone,* 665 S. W. 2d 87, 94 (Tenn. 1984). Although this claim concerned the State's failure to turn over information, it is clear that this was not a *Brady* claim.

The first appearance of anything resembling the claim now at issue occurred in 1993 when petitioner's experienced attorneys filed an amendment to his second petition for postconviction relief in the Shelby County Criminal Court. This petition included a long litany of tangled claims. Paragraph 35 of this amended petition claimed, among other things, that the State had wrongfully withheld information demonstrating that one particular prosecution witness had testified falsely concerning "petitioner and his drug use." App. 13–14. This nondisclosure, the petition stated, violated not only the Fifth and Fourteenth Amendments to the Constitution of the United States (which protect the due process right on which *Brady* is based) but also the Fourth, Sixth, and Eighth Amendments to the United States Constitution and four provisions of the Tennessee Constitution.

Two months later, counsel for petitioner filed an amendment adding 12 more claims, including one (¶41) alleging that the State had abridged petitioner's rights by failing to disclose evidence that petitioner suffered from drug problems. *Id.,* at 20. According to this new submission, the nondisclosure violated, in addition to the previously cited provisions of the federal and state constitutions, five more provisions of the state constitution, including provisions regarding double jeopardy, see Tenn. Const., Art. I, §10, *ex post facto* laws, §11, indictment, §14, and open courts, §17.

The Shelby County Criminal Court was faced with the task of wading through the morass presented in the amended petition. Under Tenn. Code Ann. §40–30–112 (1990) (repealed 1995),[3] a claim could not be raised in a postconviction proceeding if the claim had been "previously determined" or waived. Citing the State Supreme Court's rejection on direct appeal of petitioner's claim that the prosecution had violated a state discovery rule by failing to turn over witness statements, the State incorrectly informed the court that the failure-to-disclose-exculpatory-evidence claim set out in ¶41 had been "previously determined" on direct appeal. App. 15–16. The Shelby County Criminal Court rejected the claim on this ground, and held that all of petitioner's claims had either been previously determined or waived. *Id.,* at 22.

Given the importance now assigned to petitioner's *Brady* claim, one might think that petitioner's attorneys would have (a) stressed that claim in the opening brief that they filed in the Tennessee Court of Criminal Ap-

―――――――
[3] Tennessee law has since changed. Currently, the Tennessee Post-Conviction Procedure Act bars any second postconviction petition, see Tenn. Code Ann. §40–30–102 (2006), and permits the reopening of a petition only under limited circumstances, §40–30–117. These restrictions apply to any petition filed after the enactment of the Post-Conviction Procedure Act, even if the conviction occurred long before.

peals, (b) pointed out the lower court's clear error in con-
cluding that this claim had been decided in the direct
appeal, and (c) explained that information supporting the
claim had only recently come to light due to the production
of documents under the State's public records act. But
counsel did none of these things. In fact, the *Brady* claim
was not mentioned at all.

Nor was *Brady* cited in the reply brief filed by the same
attorneys. The reply brief did contain a passing reference
to "the withholding of exculpatory evidence," but the brief
did not elaborate on this claim and again failed to mention
that this claim had never been previously decided and was
supported by newly discovered evidence.[4]

The Tennessee Court of Criminal Appeals affirmed the
decision of the lower state court, but the appellate court
made no mention of the *Brady* claim, and I see no basis for
concluding that the court regarded the issue as having
been raised on appeal.

Appellate courts generally do not reach out to decide
issues not raised by the appellant. *Snell* v. *Tunnell*, 920
F. 2d 673, 676 (CA10 1990); see *Powers* v. *Hamilton Cty.
Public Defender Comm'n*, 501 F. 3d 592, 609–610 (CA6
2007); see also *Galvan* v. *Alaska Dept. of Corrections,* 397
F. 3d 1198, 1204 (CA9 2005) ("Courts generally do not
decide issues not raised by the parties. If they granted
relief to petitioners on grounds not urged by petitioners,

---

[4] After referring to a long list of claims (not including any claim for
the failure to disclose exculpatory evidence), the reply brief states:

"[I]t is clear that meritorious claims have been presented for adjudica-
tion. These claims have not been waived and a remand for a hearing is
essential in order to enable Mr. Cone to present evidence and prove the
factual allegations, including those relating to his claims of ineffective
assistance of counsel, Petition ¶¶15, 16, 44, R–67, 71 and 141 and of *the
withholding of exculpatory evidence.* Petition ¶41, R–139." Reply Brief
of Petitioner-Appellant in No. 02–C–01–9403–CR–0052, p. 5 (emphasis
added) (hereinafter Reply Brief).

respondents would be deprived of a fair opportunity to respond, and the courts would be deprived of the benefit of briefing" (footnote omitted)). Nor do they generally consider issues first mentioned in a reply brief. *Physicians Comm. For Responsible Medicine* v. *Johnson*, 436 F. 3d 326, 331, n. 6 (CA2 2006); *Doe* v. *Beaumont Independent School Dist.*, 173 F. 3d 274, 299, n. 13 (CA5 1999) (Garza, J., dissenting); *Doolin Security Sav. Bank, F. S. B.* v. *Office of Thrift Supervision*, 156 F. 3d 190, 191 (CADC 1998); *Boone* v. *Carlsbad Bancorporation, Inc.*, 972 F. 2d 1545, 1554, n. 6 (CA10 1992). And it is common to practice for appellate courts to refuse to consider issues that are mentioned only in passing. *Reynolds* v. *Wagner*, 128 F. 3d 166, 178 (CA3 1997) (citing authorities).

The Tennessee Court of Criminal Appeals follows these standard practices. Rule 10(b) of that court states quite specifically: "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." The court has applied this rule in capital cases, *State* v. *Dellinger*, 79 S. W. 3d 458, 495, 497, 503 (Tenn. 2002) (appendix to majority opinion); *Brimmer* v. *State*, 29 S. W. 3d 497, 530 (1998), and in others. See, *e.g.*, *State* v. *Faulkner*, 2001 WL 378540 (Tenn. Crim. App., Sept. 10, 2001) (73-year sentence for first-degree murder). And in both capital and noncapital cases, the court has refused to entertain arguments raised for the first time in a reply brief. See *State* v. *Gerhardt*, 2009 WL 160930 (Tenn. Crim. App., Jan. 23, 2009) (capital case); *Carruthers* v. *State*, 814 S. W. 2d 64, 68 (Tenn. Crim. App. 1991) (capital case); *Cammon* v. *State*, 2007 WL 2409568, *6 (Tenn. Crim. App., Aug. 23, 2007) (noncapital case).[5] Thus, unless the Tennessee

---

[5] In a footnote in his reply brief, petitioner stated that he was not waiving any claim presented in the court below and asked the appellate court to consider all those claims. See Reply Brief 3, n. 1. But the

Court of Criminal Appeals departed substantially from its general practice, that court did not regard petitioner's *Brady* claim as having been raised on appeal.

In the decision now under review, the Sixth Circuit held that "[t]he Tennessee courts found that Cone's *Brady* claims were 'previously determined' and, therefore, not cognizable in [his] state post-conviction action." 492 F. 3d 743, 756 (2007). In my judgment, however, there is no basis for concluding that the Tennessee Court of Criminal Appeals thought that any *Brady* issue was before it. A contrary interpretation would mean that the Tennessee Court of Criminal Appeals, disregarding its own rules and standard practice, entertained an issue that was not mentioned at all in the appellant's main brief and was mentioned only in passing and without any development in the reply brief. It would mean that the Tennessee Court of Criminal Appeals, having chosen to delve into the *Brady* issue on its own, ruled on the issue without even mentioning it in its opinion and without bothering to check the record to determine whether in fact the *Brady* issue had been decided on direct appeal. Such an interpretation is utterly implausible, and it is telling that the majority in this case cites no support for such an interpretation in the opinion of the Tennessee Court of Criminal Appeals' opinion.

The Sixth Circuit's decision on the question of procedural default rests on an erroneous premise and must therefore be vacated.

## II

I also agree with the Court that we should not affirm the decision below on the ground that the *Brady* claim lacks substantive merit. After its erroneous discussion of

---

Tennessee Court of Criminal Appeals has specifically held that claims may not be raised on appeal in this manner. See *Leonard* v. *State*, 2007 WL 1946662, *21–*22 (Tenn. Crim. App., July 5, 2007).

procedural default, the Sixth Circuit went on to discuss the merits of petitioner's *Brady* claim. In its 2001 opinion, the Court of Appeals recognized that the prosecution's *Brady* obligation extends not only to evidence that is material to guilt but also to evidence that is material to punishment. See *Cone* v. *Bell*, 243 F. 3d 961, 968 (2001) (citing *Pennsylvania* v. *Ritchie*, 480 U. S. 39, 57 (1987)). But neither in that opinion nor in its 2006 opinion did the court address the materiality of the information in question here in relation to petitioner's punishment. See 492 F. 3d, at 756 ("A review of the allegedly withheld documents shows that this evidence would not have overcome the overwhelming *evidence of Cone's guilt* in committing a brutal double murder and the persuasive testimony that Cone was not under the influence of drugs" (emphasis added)). Therefore, despite the strength of the arguments in JUSTICE THOMAS' dissent, I would leave that question to be decided by the Sixth Circuit on remand.

## III

The Court, however, does not simply vacate and remand to the Sixth Circuit but goes further.

First, the Court states without elaboration that petitioner "preserved and exhausted his *Brady* claim in the state court." *Ante*, at 20. As I have explained, petitioner did not fairly present his *Brady* claim in his prior appeal to the Tennessee Court of Criminal Appeals, and therefore that claim is either unexhausted or procedurally barred. If the State is not now foreclosed from relying on the failure to exhaust, see 28 U. S. C. §2254(b)(3), or on procedural default,[6] those questions may be decided on remand.

──────────

[6] Unlike exhaustion, procedural default may be waived if it is not raised as a defense. *Banks* v. *Dretke*, 540 U. S. 668, 705 (2004) (allowing for waiver of "procedural default" "based on the State's litigation conduct" (citing *Gray* v. *Netherland*, 518 U. S. 152, 166 (1996))). Here, it appears that the State has consistently argued that petitioner's

Second, the Court remands the case to the District Court rather than the Court of Appeals. A remand to the District Court would of course be necessary if petitioner were entitled to an evidentiary hearing, but the Court does not hold that an evidentiary hearing is either required or permitted. In my view, unless there is to be an evidentiary hearing, there is no reason to remand this case to the District Court. If the only purpose of remand is to require an evaluation of petitioner's *Brady* claim in light of the present record, the District Court is not in a superior position to conduct such a review. And even if such a review is conducted in the first instance by the District Court, that court's decision would be subject to *de novo* review in the Court of Appeals. 492 F. 3d, at 750; *Cone* v. *Bell*, 243 F. 3d, at 966–967 (CA6 2001); see *United States* v. *Graham*, 484 F. 3d 413 (CA6 2007); *United States* v. *Miller,* 161 F. 3d 977, 987 (CA6 1998); *United States* v. *Phillip*, 948 F. 2d 241, 250 (CA6 1991). Accordingly, I see no good reason for remanding to the District Court rather than the Court of Appeals. And if the majority has such a reason, it is one that it has chosen to keep to itself.

\* \* \*

For these reasons, I would vacate the decision of the Court of Appeals and remand to that court.

―――――――

*Brady* claim was procedurally defaulted, but the State's supporting arguments have shifted. Whether the question of procedural default described in this opinion should be entertained under the particular circumstances here is an intensely fact-bound matter that should be left for the Sixth Circuit on remand.

# SUPREME COURT OF THE UNITED STATES

_____

No. 07–1114

_____

## GARY BRADFORD CONE, PETITIONER *v.* RICKY BELL, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[April 28, 2009]

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting.

The Court affirms Gary Cone's conviction for beating an elderly couple to death with a blunt object. In so doing, the majority correctly rejects Cone's argument that his guilty verdict was secured in violation of his rights under *Brady* v. *Maryland*, 373 U. S. 83 (1963). The majority declines, however, to decide whether the same evidence that was insufficient under *Brady* to overturn his conviction provides a basis for overturning his death sentence. The majority instead remands this question to the District Court for further consideration because it finds that the Court of Appeals engaged in a "summary treatment" of Cone's *Brady* sentencing claim. See *ante*, at 25–27.

I respectfully dissent. The Court of Appeals' allegedly "summary treatment" of Cone's sentencing claim does not justify a remand to the District Court. Cone has failed to establish "'a reasonable probability that, had the evidence been disclosed to the defense, the result of the [sentencing] proceeding would have been different,'" *Kyles* v. *Whitley*, 514 U. S. 419, 435 (1995) (quoting *United States* v. *Bagley*, 473 U. S. 667, 682 (1985) (opinion of Blackmun, J.)). As a result, I would affirm the judgment of the Court of Ap-

peals. [1]

## I

This case arises from a crime spree 28 years ago that began with Cone's robbery of a jewelry store in Memphis, Tennessee, and concluded with his robbery of a drugstore in Pompano Beach, Florida. Along the way, Cone shot a police officer and a bystander while trying to escape the first robbery, attempted to shoot another man in a failed carjacking attempt, unsuccessfully tried to force his way into a woman's apartment at gunpoint, and murdered 93-year-old Shipley Todd and his 79-year-old wife, Cleopatra. When he was tried on two counts of first-degree murder in 1982, Cone's sole defense was that he did not have the requisite intent to commit first-degree murder because he was in the grip of a chronic amphetamine psychosis. The jury rejected the defense and convicted Cone of both murders.

At sentencing, the Tennessee jury found beyond a reasonable doubt that four statutory aggravating factors applied to Cone's offense: (1) Cone had been convicted of one or more previous felonies involving the use or threat of violence; (2) he had knowingly created a great risk of death to two or more persons other than the victim during his act of murder; (3) the murder was especially heinous, atrocious or cruel in that it involved torture or depravity of mind; and (4) the murder was committed for the purpose of avoiding a lawful arrest. Tr. 2151–2152 (Apr. 23, 1982); see also *State* v. *Cone*, 665 S. W. 2d 87, 94–96 (Tenn.

---

[1] Because I would affirm on the basis of the Court of Appeals' alternative holding below, I do not reach the issues of procedural default resolved by the majority. See *United States* v. *Atlantic Research Corp.*, 551 U. S. 128, 141, n. 8 (2007); *Ayotte* v. *Planned Parenthood of Northern New Eng.*, 546 U. S. 320, 332 (2006); *Ardestani* v. *INS*, 502 U. S. 129, 139 (1991).

1984). Tenn. Code Ann. §39–2-203(i) (1982).[2] Cone argued to the jury at sentencing that his "capacity . . . to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected his judgment." See §39–2-203(j)(8). But the jury found that neither this, nor any other mitigating factor, outweighed the aggravating factors. The jury, as required by Tennessee law, unanimously sentenced Cone to death. See §39–2-203(g).

For almost three decades, Cone's case has traveled through the Tennessee and federal courts. This Court has twice reversed decisions from the Court of Appeals that invalidated Cone's conviction and sentence. See *Bell* v. *Cone*, 535 U. S. 685 (2002); *Bell* v. *Cone*, 543 U. S. 447 (2005) *(per curiam)*. On remand from this Court's latest decision, the Court of Appeals directly considered whether a handful of police reports, law enforcement bulletins, and notes that were allegedly withheld from Cone's trial attorneys could have changed the result of Cone's trial or sentencing. And, for the second time, the Court of Appeals held that there was not a "'reasonable probability'" that the evidence would have altered the jury's conclusion "that Cone's prior drug use did not vitiate his specific intent to murder his victims and did not mitigate his culpability sufficient to avoid the death sentence." 492 F. 3d 743, 757 (CA6 2007). The Court of Appeals, therefore, held that neither Cone's conviction nor his sentence was invalid.

_____

[2] The Tennessee Supreme Court later concluded that the record in Cone's case was doubtful as to evidence supporting the second circumstance given the lapse in time between the initial events of the escape and the Todd murders. *Cone*, 665 S. W. 2d, at 95. The court, however, determined that the existence of the other three factors rendered any possible error in this factor harmless beyond a reasonable doubt. *Ibid.*

See *ibid.; Cone* v. *Bell*, 243 F. 3d 961, 968 (CA6 2001). We should affirm the Court of Appeals and put an end to this litigation.

## II

According to the majority, the Court of Appeals' decision affirming Cone's death sentence is too "summary," *ante*, at 25, and the facts are such that, on further examination, Cone "might" be able to demonstrate that it is "possible" that the contested evidence would have persuaded the jury to spare his life, *ante,* at 25–26. On this reasoning, the majority remands the case directly to the District Court for "full consideration [of] the merits of Cone's [sentencing] claim." *Ante,* at 27. I disagree on all counts. Remanding the sentencing issue to the District Court is an "unusual step" for this Court to take. *House* v. *Bell*, 547 U. S. 518, 557 (2006) (ROBERTS, C. J., concurring in judgment in part and dissenting in part). Furthermore, in this case, it is a step that is legally and factually unjustified. There is not "'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles*, 514 U. S., at 433–434 (quoting *Bagley*, 473 U. S., at 682 (opinion of Blackmun, J.)).

## A

The majority's criticism of the Court of Appeals' allegedly "summary treatment" of the sentencing question is misplaced. Before the Court of Appeals, Cone dedicated eight pages of his opening brief to arguing that the implicated evidence was material to his guilt or innocence, but spent only one paragraph arguing its materiality to his death sentence. See Brief for Appellant in No. 99–5279 (CA6), pp. 40–48. The Court of Appeals' focus on the guilt phase, rather than the sentencing phase, simply followed Cone's lead. See 492 F. 3d, at 755 ("In his most recent brief, claiming that his receiving the withheld evidence

would have resulted in a different sentence, Cone has made only conclusory arguments").[3]    There is nothing defective about a judicial decision that summarily rejects an abbreviated legal argument, especially where, as here, the burden of proving the materiality of the contested evidence was on Cone.[4]

## B

In remanding this matter to the District Court, the majority makes two critical errors—one legal and one factual—that leave the false impression that Cone's *Brady* claim has a chance of success.  First, the majority states that "[i]t is *possible* that the suppressed evidence" may have convinced the jury that Cone's substance abuse played a mitigating role in his crime and "[t]he evidence *might* also have rebutted the State's suggestion" that Cone's experts were inaccurately depicting the depth of his drug-induced impairment.  *Ante*, at 26 (emphasis added); see also *ante,* at 26–27 (remanding "[b]ecause the evidence suppressed at Cone's trial *may well have been* material to the jury's assessment of the proper punishment in this case" (emphasis added)).  But, as the majority implicitly

---

[3] The assertion by the majority, *ante*, at 26, n. 19, and JUSTICE ALITO, *ante*, at 8 (opinion concurring in part and dissenting in part), that the Court of Appeals did not address the merits of the sentencing issue at all is flatly wrong.  See 492 F. 3d, at 757 (rejecting Cone's *Brady* claim because the proffered evidence would not have altered the jury's conclusion "that Cone's prior drug use did not vitiate his specific intent to murder his victims *and did not mitigate his culpability sufficient to avoid the death sentence*" (emphasis added)).

[4] The majority does not attempt to justify its remand by contending that it is necessary because the record is insufficient to decide the claim.  Nor could it persuasively contend a remand is necessary so that the District Court can hold an evidentiary hearing.  Such a hearing would shed no additional light on the trial proceedings or the relative impeachment value of the withheld documents.  Cone himself agrees that "this Court should resolve the merits of [his] *Brady* claim."  Reply Brief for Petitioner 24; see also Brief for Respondent 26–27.

acknowledges, see *ante*, at 26, n. 19, this is not the correct legal test for evaluating a *Brady* claim: "The mere possibility that an item of undisclosed information *might* have helped the defense, or *might* have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States* v. *Agurs*, 427 U. S. 97, 109– 110 (1976) (emphasis added).

Rather, this Court has made clear that the legal standard for adjudicating such a claim is whether there is a "reasonable probability" that the jury would have been persuaded by the allegedly withheld evidence. *Kyles*, *supra*, at 435; *Bagley*, *supra*, at 682 (opinion of Blackmun, J.). It simply is not sufficient, therefore, to claim that "there is a reasonable *possibility* that . . . testimony might have produced a different result . . . . [P]etitioner's burden is to establish a reasonable *probability* of a different result." *Strickler* v. *Greene*, 527 U. S. 263, 291 (1999) (emphasis in original). To satisfy the "reasonable probability" standard, Cone must show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence" in the jury's sentencing determination. *Kyles*, *supra*, at 435. The Court must view the record "as a whole," *Sawyer* v. *Whitley*, 505 U. S. 333, 374 (1992) (STEVENS, J., concurring in judgment), and determine whether the absence of the disclosure prevented Cone from receiving "'a trial resulting in a [sentence] worthy of confidence.'" *Strickler*, *supra*, at 290 (quoting *Kyles*, 514 U. S., at 434).

In the context of this case, for Cone to establish "'a reasonable probability that, had the evidence been disclosed to the defense, the result of the [sentencing] proceeding would have been different,'" *id*., at 435, he must not only demonstrate that the withheld evidence would have established that he was substantially impaired as a result of drug abuse or withdrawal; Cone also must establish that the addition of the allegedly withheld evidence

ultimately would have led the jury to conclude that any mitigating factors (including substantial impairment) outweighed all of the established aggravating factors. See Tenn. Code Ann. §39–2-203(g).[5]

Second, the majority incorrectly claims that to prevail on his *Brady* claim, Cone must demonstrate simply that the withheld evidence supported the inference that he "was impaired by his use of drugs around the time his crimes were committed." See *ante*, at 21. This is factually inaccurate because there was already significant evidence of Cone's drug use at trial. To establish that the allegedly withheld evidence would reasonably have had any impact on his case, Cone must instead show that the evidence would have supported his claim of *substantial* mental impairment from drug use.

There was extensive evidence at trial that supported the inference that Cone was not only a longstanding drug user, but that he was in fact using drugs at the time of his crimes. The State itself presented significant evidence on this point. For example, it presented proof that officers found marijuana cigarette butts, empty drug vials, and loose syringes in the car that Cone abandoned immediately after the jewelry store robbery. Tr. 1505–1509 (Apr. 19, 1982). The State also did not challenge testimony from Cone's mother that Cone used drugs. *Id.*, at 1647, 1648–1653 (Apr. 20, 1982). And, most tellingly, the State introduced evidence that Cone was abusing three drugs—

―――――――――

[5]The majority asserts that the standard under Tennessee law for demonstrating mental defect or intoxication as a mitigating factor at sentencing is "far lesser" than the standard for demonstrating insanity in the guilt phase of a criminal trial. *Ante*, at 25. But the mitigating factor still requires a showing that Cone's mental capacity was "substantially impaired" as a result of mental defect. Tenn. Code Ann. §39–2-203(j)(8). In any event, the only authority cited by the majority for its assertion that the standard is "far" lesser than that for insanity is JUSTICE STEVENS' lone dissent in a prior appeal in this case. *Ante*, at 25.

cocaine, Dilaudid, and Demerol—at the time of his arrest and was suffering "slight withdrawal symptoms" from them. *Id.*, at 1915–1916, 1920 (Apr. 22, 1982). As the Court of Appeals explained, "[i]t would not have been news to the jurors, that Cone was a 'drug user.'" 492 F. 3d, at 757.[6]

In contrast, what *was* contested by the State during trial was Cone's defense that his drug use was so significant that it caused him to suffer from extreme amphetamine psychosis at the time of the murders. One of Cone's expert witnesses, a neuropharmacologist, testified that by the summer of 1980, when the crimes occurred, Cone was ingesting "ferociously large doses" of drugs and that his increasing tolerance and use of amphetamines caused a chronic amphetamine psychosis. Tr. 1736–1737, 1744–1747, 1758–1759 (Apr. 21, 1982). The expert further testified that if a person with chronic amphetamine psychosis were to go into withdrawal, he could suffer extreme mood swings, "a crashing depression," and a state of weakness so severe that "he could barely lift himself." *Id.*, at 1857–1859. In this expert's view, these symptoms could cause a person to "lose his mind." *Id.*, at 1859.

The State contradicted that testimony with significant

_____

[6] Although there were two occasions during closing arguments where prosecutors intimated that Cone was not a drug user, see Tr. 2014–2015, 2068 (Apr. 22, 1982), the State's argument otherwise consistently focused on the real issue in the case: that Cone was not so significantly affected by his drug use around the time of his crimes that he was "out of his mind" or "drug crazy" during the critical days of August 1980. See *id.*, at 2023–2024, 2071–2084. The majority's focus on two brief excerpts from the State's closing argument fails to faithfully view the record "as a whole" for purposes of a *Brady* analysis. See *Sawyer* v. *Whitley*, 505 U. S. 333, 374 (1992) (STEVENS, J., concurring in judgment); see also *Strickler* v. *Greene,* 527 U. S. 263, 290–291 (1999) (finding no reasonable probability of a different result even when prosecutor's closing argument relied on testimony that could have been impeached by withheld material).

evidence that Cone did not act like someone who was "out of his mind" during the commission of his crimes. Rather, the State argued, Cone behaved rationally during his initial Tennessee robbery, his subsequent escape, his flight from Tennessee to Florida after the Todd murders, his Florida robbery, and his subsequent arrest. See, *e.g., id.,* at 2074–2084 (Apr. 22, 1982). To substantiate this argument, the State called FBI Special Agent Eugene Flynn to the stand. Agent Flynn testified that, when captured, Cone coherently detailed his travel from Tennessee to Florida, explained his efforts to evade detection by shaving his beard and buying new clothes, and initiated negotiations for a plea bargain. *Id.,* at 1918–1921. The State also presented testimony from a friend of Cone's, Ilene Blankman, that she saw no indication that Cone was under the influence of drugs or severe withdrawal in the days immediately following the murder of the Todds. *Id.,* at 1875–1876, 1882–1883 (Apr. 21, 1982).

Viewing the record as a whole, then, it is apparent that the contested issue at trial and sentencing was not whether Cone used drugs, but rather the quantity of Cone's drug use and its effect on his mental state. Only if the evidence allegedly withheld from Cone was relevant to *this* question whether Cone suffered from extreme amphetamine psychosis or other substantial impairment would the evidence have been exculpatory for purposes of *Brady*. See Order Denying Motion for Evidentiary Hearing and Order of Partial Dismissal, *Cone* v. *Bell*, No. 97–2312–M1/A (WD Tenn., May 15, 1998), App. to Pet. for Cert. 119a, n. 9 (explaining that "the issue at trial was not whether Cone had ever abused any drugs (he clearly had), but whether he was out of his mind on amphetamines at the time of the murders"); Tr. 2115–2116 (Apr. 23, 1982).

## III

With the legal and factual issues correctly framed, it

becomes clear that Cone cannot establish a reasonable probability that admission of the evidence—viewed either individually or cumulatively—would have caused the jury to alter his sentence.

### A
#### 1

Cone first argues that he was improperly denied police reports that included witness statements regarding Cone's behavior around the time of his crime spree. The first statement was given by a convenience store employee, Robert McKinney, who saw Cone the day before he robbed the Tennessee jewelry store. When asked whether Cone appeared "to be drunk or high on anything," McKinney answered, "[w]ell he did, he acted real weird . . . he just wandered around the store." App. 49. But McKinney subsequently clarified that Cone "didn't sound drunk" and that the reason Cone attracted his attention was because he "wasn't acting like a regular customer"; he was "just kinda wandering" around the store. Motion to Expand the Record in No. 97–2312–M1 (WD Tenn.), Exh. 2, pp. 3, 4. Contrary to the majority's assertion, this interview is not convincing evidence "that Cone appeared to be 'drunk or high'" when McKinney saw him. *Ante*, at 21. McKinney's clarification that he had characterized Cone's behavior as "weird" because Cone appeared to be killing time rather than acting like a normal shopper undermines the implication of McKinney's earlier statement that Cone looked "weird" because he might have been drunk or on drugs. Thus, there is little chance that McKinney's statement would have provided any significant additional evidence that Cone was using drugs, let alone provide sentence-changing evidence that he was substantially impaired due to amphetamine psychosis.

The second statement was given by Charles and Debbie Slaughter, who both witnessed Cone fleeing from police

after the jewelry store robbery and reportedly told police that he looked "wild eyed." App. 50. Cone had just robbed a jewelry store, shot a police officer and a bystander, and was still fleeing from police when seen by the Slaughters. It is thus unlikely that their observation of a "wild eyed" man would have been interpreted by the jury to mean that Cone "was suffering from chronic amphetamine psychosis at the time of the crimes," *ante*, at 21, n. 16, rather than to mean that Cone looked like a man on the run.

The third statement is contained in a police report authored by an officer who helped apprehend Cone after the Florida drugstore robbery. He reported that he saw a suspect "at the rear of Sambos restaurant. Subject was observed to be looking about in a frenzied manner and also appeared to be looking for a place to run." App. 53. Nothing in this police report either connects Cone to drug use or appears otherwise capable of altering the jury's understanding of Cone's mental state at the time of the crimes. It certainly makes perfect sense that Cone was "looking about in a frenzied manner," *ibid.;* he had just robbed a drugstore and was about to engage in a gun battle with police in order to evade arrest. The police officer's description of Cone's appearance under these circumstances thus does not "undermine confidence" in Cone's sentence. *Kyles*, 514 U. S., at 435.

2

The next category of documents that Cone relies upon to establish his *Brady* claim are police bulletins. Some of the bulletins were sent by Memphis Police Sergeant Roby to neighboring jurisdictions on the day of the Todd murders and the day after. The bulletins sought Cone's apprehension and alternatively described him as a "drug user" or a "heavy drug user." App. 55–58. Cone asserts that he could have used these bulletins to impeach Sergeant Roby's trial testimony that the sergeant did not see any

track marks when visiting Cone in jail a week later. Tr. 1939 (Apr. 22, 1982). Cone's reasoning is faulty for two key reasons. First, Sergeant Roby never testified that Cone was not a drug user. His only trial testimony on this point was simply that he observed no "needle marks" on Cone's arm when taking hair samples from him a few days after Cone's apprehension. *Ibid.* Second, the bulletins establish only "that the police were initially cautious regarding the characteristics of a person who had committed several heinous crimes." App. to Pet. for Cert. 119a, n. 9. The bulletins would not have tended to prove that the fugitive Cone was, in fact, a heavy drug user—let alone "out of his mind" or otherwise substantially impaired due to amphetamine psychosis—at the time of his crimes.[7]

### 3

Cone also argues that material was withheld that could have been used to impeach Ilene Blankman's testimony that Cone did not appear to be high or in withdrawal when she helped him obtain a Florida driver's license during his efforts to evade arrest in Florida. Tr. 1875–1882 (Apr. 21, 1982). But he again fails to meet the standard for exculpatory evidence set by *Brady*.

Cone first points to police notes of a pre-trial interview with Blankman, which did not reflect the statement she gave at trial that she saw no track marks on Cone's arm. App. 72–73. But Blankman was questioned at trial about

---

[7] Alert bulletins sent by the FBI similarly identified Cone as a "believed heavy drug user" or a "drug user." App. 62–70. Cone argues that these bulletins could have been used to impeach FBI Agent Flynn's testimony about Cone's arrest in Florida. The bulletins would not have constituted material impeachment evidence, however, for the second reason identified above. In addition, the bulletins would not have contradicted any of FBI Agent Flynn's testimony; he in fact stated at trial that Cone reported using three drugs and was undergoing mild drug withdrawal when he was captured in Florida. Tr. 1915–1916 (Apr. 22, 1982).

her failure to initially disclose this fact to police, Tr. 1903 (Apr. 21, 1982), so the jury was fully aware of the omission. Disclosure of the original copy of the police notes thus could not have had any material effect on the jury's deliberations. Moreover, the missing notes also recorded a damning statement by Blankman that Cone "never used drugs around" her and she "never saw Cone with drug paraphernalia." App. 73. Thus, it is difficult to accept Cone's argument that he would have benefited from the introduction of notes from Blackman's pretrial interview. If anything, these police notes would have undermined his mitigation argument.

Cone next relies on a report that describes a woman's confrontation with the prosecution team and Blankman at a restaurant during trial. During the encounter, the woman accused Blankman of lying on the stand in order to frame Cone for the murders. *Id.,* at 74–75. The report indicates that the prosecutors politely declined the woman's numerous attempts to discuss the merits of the case and that Blankman said nothing. *Id.,* at 75. Nothing about this encounter raises doubts about Blankman's credibility.

Last, Cone points to "correspondence in the district attorney's files suggest[ing] that the prosecution had been unusually solicitous of [Blankman's] testimony." Brief for Petitioner 45. But the correspondence was completely innocuous. One of the notes, sent in response to Blankman's request for a copy of her prior statement, expressed to Blankman that her "cooperation in this particular matter is appreciated." App. 76. The prosecutor then sent a letter to confirm that Blankman would testify at trial. *Id.*, at 77. And finally, after trial, the prosecutor sent a note to inform Blankman of the verdict and indicate that they "certainly appreciate[d] [her] cooperation with [them] in the trial of Gary Bradford Cone." *Id.,* at 78. There is nothing about these notes that "tend[s] to prove any fact

that is both favorable to Cone and material to his guilt or
punishment." App. to Pet. for Cert. 116a.

## B

Viewing the record as a whole, Cone has not come close
to demonstrating that there is a "reasonable probability"
that the withheld evidence, analyzed individually or cu-
mulatively, would have changed the result of his sentenc-
ing. Much of the impeachment evidence identified by
Cone is of no probative value whatsoever. The police
bulletins do not contradict any of the trial testimony; the
restaurant encounter was innocuous; and the correspon-
dence sent by prosecutors to Blankman does not under-
mine her testimony or call Cone's mental state into doubt.
If the remaining evidence has any value to Cone, it is
marginal at best. There was testimony that Blankman
did not initially tell police that Cone lacked track marks.
See Tr. 1903 (Apr. 21, 1982). McKinney clarified in his
statement that Cone's activity in the store was consistent
with a person killing time, not the use of drugs or alcohol.
And the behavior described by the Slaughters and the
Florida police officer is more naturally attributable to the
circumstances of Cone's flight from the police than to any
inference that Cone was "out of his mind" or otherwise
substantially impaired due to amphetamine psychosis.

Countering the trivial value of the alleged *Brady* mate-
rial is the clear and overwhelming evidence that during
Cone's crime spree, he was neither sufficiently insane to
avoid a conviction of murder nor substantially impaired by
his drug use or withdrawal-related psychosis. There was
substantial evidence that Cone carefully planned the
jewelry store robbery and was calm in carrying it out, Tr.
at 974–976, 1014 (Apr. 16, 1982), 1350–1352 (Apr. 17,
1982), 1501 (Apr. 19, 1982), 2075 (Apr. 22, 1982); that he
successfully eluded police after engaging them in a shoot-
out, *id.*, at 1053–1064 (Apr. 16, 1982); that, after hiding

overnight, he concocted a ruse to try to gain illegal entry
to a residence, *id.*, at 1205–1208 (Apr. 17, 1982); that he
murdered the Todds after they declined to cooperate with
his efforts to further elude police, *id.*, at 1681 (Apr. 20,
1982); that he took steps to change his appearance at the
Todd residence and then successfully fled to Florida, *id.*, at
1918–1919 (Apr. 22, 1982); that he arrived in Florida
exhibiting no signs of drug use or severe withdrawal, *id.*,
at 1875–1882 (Apr. 21, 1982); that he obtained false iden-
tification in a further effort to avoid apprehension, *id.*, at
1881–1882, and that he denied any memory lapses and
described undergoing only minor drug withdrawal when
police arrested him, *id.*, at 1919–1920 (Apr. 22, 1982).
Given this wealth of evidence, there is no "reasonable
probability" that the jury would have found that Cone was
entitled to the substantial impairment mitigator had the
evidence he seeks been made available to him.

And even if Cone could have presented this evidence to
the jury at sentencing and established an entitlement to
this mitigator, he still has not demonstrated a reasonable
probability that it would have outweighed all of the aggra-
vating factors supporting the jury's death sentence.  See
*id.,* at 2151–2154 (Apr. 23, 1982).  In its decision on direct
appeal, the Tennessee Supreme Court was well aware of
the evidence regarding the "degree and extent of [Cone's]
drug abuse." *Cone*, 665 S. W. 2d, at 90.  As part of its
required independent review of whether the mitigation
evidence was sufficiently substantial to outweigh the
aggravating factors, see Tenn. Code Ann. §39–2-205, the
Tennessee court nevertheless concluded that the sentence
was "not in any way disproportionate under all of the
circumstances, including the brutal murders of two elderly
defenseless persons by an escaping armed robber who had
terrorized a residential neighborhood for twenty-four
hours." 665 S. W. 2d, at 95–96.  None of Cone's proffered
evidence places that conclusion, made by both the jury and

the Tennessee Supreme Court, "in such a different light as to undermine confidence" in Cone's sentence. *Kyles*, 514 U. S., at 435; see also *Strickler*, 527 U. S., at 296.

## IV

This Court should not vacate and remand lower court decisions based on nothing more than the vague suspicion that error might be present, or because the court below could have been more clear. This is especially so where, as here, the record before the Court is adequate to evaluate Cone's *Brady* claims with respect to both the guilt and sentencing phases of his trial. The Court's willingness to return the sentencing issue to the District Court without any firm conviction that an error was committed by the Court of Appeals is inconsistent with our established practice and disrespectful to the lower courts that have considered this case. Worse still, the inevitable result will be years of additional delay in the execution of a death sentence lawfully imposed by a Tennessee jury. Because I would affirm the judgment below, I respectfully dissent.